THE TOWN OF CHATHAM *vs.* ALEXANDER N. NILES AND OTHERS.*

A bill in chancery brought by a town against former selectmen of the town prayed for an account of certain funds received by the respondents while in office for the purpose of paying for volunteer recruits for the military service of the United States to fill the quota of the town. The respondents in their answer among other things set up an account stated, which they claimed had been presented to and accepted by the town in a lawful town meeting, and denied all allegations of the bill not specifically admitted. The petitioners replied, re-affirming the averments of the bill and denying those of the answer, and especially denying that there had been an account stated. Held that a committee to whom the case was referred was not bound to limit his inquiry to the question whether there was an account stated, but might properly proceed to inquire into and state the account.

The respondents at an annual town meeting, during their term of office, presented their regular report as selectmen, and with it a special report with regard to moneys received and disbursed in the matter of recruits, and the town thereupon voted "to accept the report of the selectmen." The account gave only the aggregate sums expended, without items, names, or dates, and was retained by one of the selectmen and not placed on file among the papers of the town. The committee found that the town acted in the matter without

*This case was argued at Hartford during the session of the court for Hartford and Tolland counties, the judges present being BUTLER, C. J., PARK, CARPENTER, and LOOMIS, Js.

scrutiny and without knowledge or information of particulars, on a general confidence in the respondents, and refused to receive the action of the town as a conclusive settlement between the parties. Held that the committee was justified in so doing.

A party possessing the confidence of another is bound to use the utmost candor and good faith in his dealings with him. This is especially so in respect to towns and other corporations that are obliged to transact all their business through agents. A report of such agents so framed as to withhold all information as to particulars indicates a disposition to abuse the confidence reposed, and is an important fact in determining the question whether the parties have intentionally and understandingly settled their accounts.

A special town meeting called for the purpose voted that the selectmen be instructed to pay a sum not exceeding $300 for every recruit furnished and applied on the quota of the town, and a premium of $10 per man to persons procuring recruits. The meeting appropriated $6,000 for the purpose, and voted that the respondents, who were the selectmen of the town, should with certain others be a committee to see that the appropriation was expended in accordance with the vote. *N* and *S*, two of the respondents, then stated in the meeting that they declined acting as such committee or as selectmen in procuring the recruits and that if they did anything in the matter it would be in their private capacity. This statement was made publicly and with no purpose to escape attention, but not in such a way as to secure general attention, and in fact was not generally understood by the meeting. Immediately after the meeting *N* and *S*, intending to act in their private capacity only, proceeded to secure recruits, and charged the town in their account $300, and $10 premium, for each recruit so obtained. Held that upon the facts they ought to be considered as having acted solely in their capacity as selectmen or members of the committee, and that they should be allowed only for their actual expenditures in procuring the recruits, without any profit to themselves beyond the premium offered by the vote of the town.

Upon the hearing before the committee the respondents denied their liability to render an account on the ground that the account had already been stated and accepted by the town, and upon the decision of the committee to investigate the account, they, under the advice of counsel, declined to go into evidence on the subject on their part, and the committee upon such evidence as was furnished by the petitioners stated the account and found a certain amount due, reporting that in view of the position taken by the respondents in the matter he had presumed certain facts against them, where the evidence was imperfect. Held that in the peculiar circumstances of the case it was not unreasonable to give the respondents a further opportunity to render a full and just account.

BILL IN EQUITY against the respondents, Alexander N. Niles, Henry M. Dunham and Charles L. Strong, former selectmen of the plaintiff town, for an account of moneys received while in office and for a disclosure with regard to the same; brought to the Superior Court in Middlesex county.

The respondents filed an answer denying all the allegations

Chatham *v.* Niles.

of the bill except so far as admitted by the answer and admitting the receipt of sundry sums of money to be used under votes of the town, which were set out in the answer, for procuring volunteers for the military service of the United States, to be applied on the quota of the town, under the call of the general government for soldiers. The answer then proceeded to set out a report made to the town of the amount of money received and paid out in the matter of recruits, and averred that the report was duly accepted by a vote of the town. It also answered the interrogatories of the petition. The petitioners filed a replication, reaffirming all the averments of the bill and denying all the averments of the answer, and especially denying that any such report was ever made to the town, and averring that if made it was so made as to be unintelligible and was not in fact understood by the persons present at the town meeting, and was not left with the town clerk in his office, and had ever since remained in the possession of the respondents, who had refused to deliver the same to the officers of the town or to submit the same to their inspection or to that of other inhabitants of the town who had requested them to exhibit the same.

The case was referred to a committee who made the following report.

Two of the respondents, Niles and Dunham, were, with others, selectmen of the town of Chatham for one or more years prior to the annual town meeting held in October, 1863, at which the three respondents were elected, without others, to be the selectmen of the town for the year ensuing. They acted, and were re-elected alone, and acted in the same office the following year. At the annual meeting of the town in October, 1865, others were chosen to the place and the respondents ceased to be selectmen. Sundry sums of money belonging to the town, and obligations made by the town, were received, disbursed and disposed of on account of the town by the respondents, or some of them, while they were selectmen, prior to July, 1864; but the petitioners at the hearing stated to the committee that they made no question respecting any of these except the sum of $95 hereinafter

mentioned, and the committee accordingly finds that for money or other property or obligations of the town received by the respondents, or any of them, and in question by the pleadings prior to and other than those which are hereinafter to be spoken of, there is nothing which has not been accounted for to the town except $95. This sum was left over of the town's money in the hands of Niles as selectman, from the previous transactions, and was carried forward and appropriated with other monies of the town as hereinafter stated. The above finding covers all matters except said $95 prior to the July call of 1864.

While the respondents were selectmen of the town, and during the late war of the rebellion, there was, in July 1864, a call by the President of the United States for 500,000 men to serve in the army; and thereupon a town meeting was legally called and held on the 30th day of July, 1864, at which the town voted to appropriate $5,000 to procure volunteers or substitutes, and authorized the selectmen to borrow that sum, and appointed the selectmen a committee to carry out the object of the vote. Several adjourned meetings were holden at which further appropriations were made and other like action taken, the town voting to allow $300 to every person volunteering or procuring a volunteer or substitute, until the quota of the town was filled. The respondents acted under the votes passed at these meetings as a committee to procure volunteers for the quota of the town, and procured twenty-one men, the number necessary to fill the quota finally assigned to the town under the call. To defray the expense of this the respondents as selectmen raised on a note of the town, payable at the Middletown Bank, for $5,000, the sum of $4,845. They also received for money raised by voluntary contributions of individuals for the same purpose, and paid over to the respondents for the town, to carry out the same object, the sum of $2,663.73 cents, making in all $7,511.73 cents. Of this they paid over to the town treasurer $152.73 cents, leaving a balance in their hands of $7,359 to be otherwise accounted for.

No further call for men from the state of Connecticut was made after that of July 1864, and therefore there was no further quota assigned to the town to fill, but the respondents while selectmen, in the view that there might be such another call, warned another meeting of the town to be held on the 26th of November, 1864, "to consider the propriety and expediency of procuring volunteers to apply on the quota of the town in advance of the call which it is believed will soon be made," which meeting was duly held and adjourned to November 28th, 1864. At the adjourned meeting the following votes were passed:

"*Voted,* That the sum of six thousand dollars in addition to any appropriation heretofore made, be and the same is hereby appropriated by the town of Chatham to be expended in procuring volunteers to apply on the quota of the town in anticipation of future calls.

"*Voted,* That the selectmen be authorized and instructed to borrow the sum of six thousand dollars, pledging the faith and credit of the town therefor, and that the same be used, or so much thereof as may be necessary, in procuring volunteers.

"*Voted,* That the selectmen be instructed to pay the sum of three hundred dollars to any person enlisting in the town and applying on its quota; and a sum not exceeding three hundred dollars to any person furnishing satisfactory evidence that a volunteer recruit from out of the town has been mustered into the United States service and is credited to the town of Chatham.

"*Voted,* That the number of men to whom the bounty is offered be limited to twenty, and the premium for recruits be fixed at ten dollars per man including expenses.

"*Voted,* That Alexander N. Niles, Henry M. Dunham, Chas. L. Strong, Charles A. Buell, and Joseph N. Goff, be a committee to see that the action of the town as specified in the foregoing votes be complied with, and the appropriations expended in accordance therewith, and for no other purpose whatever, viz: to three years volunteers, three hundred dollars, and in the same ratio for one and two years volunteers."

After the vote was passed appointing the respondents, with Messrs. Buell and Goff, a committee for the purposes therein stated, the respondents Niles and Strong declined acting as such committee, or as selectmen in procuring men under the action of the meeting, and said that if they did anything in that regard it would be as private citizens. This statement was publicly made in the meeting, and with no purpose to escape attention, but not in so marked a way as to specially call attention to it, as in the opinion of the committee should have been done under the circumstances, to justify them in the course they afterwards took in the matter. In fact this statement was not heard or understood by a part of the meeting, although others of those present heard and understood it. Immediately after the meeting Niles and Strong, intending to act in their private capacity, and not as selectmen or a committee, proceeded to secure men, and shortly after caused to be mustered into the service of the United States from out of the town of Chatham, and to the credit of the town, twenty-four men, volunteer recruits, each for the period of three years. The respondents, in reference to this, as selectmen, raised the sum of $5,817 on a note of the town for $6,000 given by them, payable at the Middletown Bank, the date and time of payment of which were not in evidence, but no question was made but that the town had paid or provided for the same. This $5,817 was received by and came into the hands of Niles and Strong, and was taken by them as part of what they claimed was their due for the procuring the last named men. Shortly afterwards Niles and Strong notified Buell and Goff, the persons named with the respondents in the committee vote, that they had procured the twenty-four men and wished them to get together and act under their appointment as committee. Goff and Buell thereafter soon met with Strong at the town clerk's office in the town, and having satisfied themselves that the men claimed had been procured and mustered into the service of the United States to the credit of the town of Chatham, signed the following certificate respecting them: "We, the undersigned,

having examined the evidence presented by A. N. Niles and
C. L. Strong, do find they have furnished twenty-four men
for the United States service, to count on the quota of the
town of Chatham for the term of three years, and that
they are entitled to the sum of three hundred and ten dol-
lars each, to the number of twenty, by a vote of the town
of Chatham, passed Nov. 28th, 1864, amounting to the sum
of $6,200; and we find further that the said Niles and
Strong have received from the town of Chatham on town
note the sum of $5,817 : and further find that there is now
due the said Niles and Strong for said men the sum of
$383." Mr. Dunham, who was the other selectman and
was named in the vote as one of the committee, came into the
town clerk's office before the others left, and after the writing
had been signed by Buell and Goff, and declared himself sat-
isfied with what was done, but did not sign the paper. This
writing so signed was left in the town clerk's office by the
signers, but was never recorded; and how or when it was
taken away did not appear, but it was taken from the office,
and at the annual town meeting in 1865 was in the hands
of Niles, and has never been returned to the town. Niles
and Strong, to make up the $6200 dollars which they claimed
from the town in addition to the $5817, appropriated the $95
before mentioned as left over in the hands of Niles from an
earlier date ; and took $288 in orders on the town treasurer,
made by the respondents or some of them as selectmen, on
which they have received the money, making in all the sum
of $6,200, which they claimed and received of the money of
the town for the twenty men mentioned in-the Goff and Buell
certificate. This certificate was offered in evidence by the
respondents and received, but was objected to by the peti-
tioners as not being authorized by the town, and as not the
act of the whole committee and as never recorded. It was
not claimed, and in fact it was not so, that any account of
how much was paid to each or either of these twenty men,
or whether anything or what had been expended to procure
them, was ever made known to either Buell or Goff.

VOL. XXXVI.—52

So matters remained until the annual meeting of the town in October, 1865, when the respondents ceased to be selectmen. This meeting was warned as an annual town meeting, " to appoint the usual town officers ; to lay all necessary taxes for the support of the poor, roads, and bridges, and common schools in the town ; also, if thought best, to lay a special tax to cancel the unfunded debt of the town incurred for war purposes, and to transact any other business that may be necessary and legal." At the meeting Niles, as chairman of the board of selectmen, presented their ordinary report of their doings as selectmen for the year past, and next following this caused the writing signed by Buell and Goff to be read to the meeting, and then, in behalf of the respondents, made the following report in writing :

" *Report of selectmen with regard to recruits.*

" The number of men put into the service by the town of Chatham since the commencement of the war, if you include T. G. Brown, chaplain, Levi Jewett, surgeon, and a man from Middle Haddam for whom we had no credit from the war department, is two hundred. Included in this number are twelve who were drafted for whom the town paid three hundred dollars each, and received the proper credit, at a cost of $30,930.43, being an average of $154.65 per man.

" No person received less than $100, except in two instances, in which they received $75.00.

" Of the above amount was contributed by those subject to draft, $3,163.76 ; leaving balance paid by the town, $27,766.67. If you divide the sum by the number furnished, 200, it gives as the average sum paid by the *town* for volunteers, $138.83.

" Our last report on this subject brought us down to the call of July 18th, 1864, which found in my hands $95.

" The quota for Chatham under that call was 36, which by re-enlistments and re-arrangement of quota was reduced, so that we furnished 21 men at a cost of $7,359.00, being $350.04 per man. This money was raised as follows :

Chatham *v.* Niles.

| | | |
|---|---:|---:|
| " On a town note at Middletown Bank, | $4,845.00 | |
| and from individuals | 2,663.73 | |
| making together | $7,511.73 | |
| to which add | 95.00 | |
| | $7,606.73 | |
| from which if you deduct | 7,359.00 | |
| it would leave | | 247.73 |
| of which sum was paid C. A. Buell | | 152.73 |
| leaving in my hands | | $95.00 |

" This brings us down to the call of December, 1864, on which no quota was assigned to this town or state.

" Anticipating this call the town in their wisdom voted to put into the service twenty men, and to authorize the payment of a sum not exceeding $300 per man, and ten dollars each for recruiting, to any person who would furnish to the committee satisfactory evidence that a man had been enlisted for three years and credited to the town of Chatham. In pursuance of this vote 24 men were put into the service by A. N. Niles and C. L. Strong.

" The committee being limited by the vote, allowed and paid for but 20, amount,                $6,200.00

" The money was raised as follows :

| | | |
|---|---:|---|
| " On town note for $6000 at Middletown Bank, | $5817.00 | |
| " Balance in hands of A. N. Niles, | 95.00 | |
| " Making in all, | $5,912.00 | |
| " Leaving a deficiency, for which town orders have been drawn, of, | 288.00 | |
| | $6,200.00 | |

" East Hampton, Oct. 2d, 1865.

A. N. NILES."

Thereupon the following vote was passed by the meeting: " *Voted*, To accept the report of the selectmen." Niles then said that he and Strong had $450 which some thought they ought to have, and others thought should be the town's; but that they would pay it over to the town if the town said so. Shortly after this the following motion was made and passed by the meeting: *Motion ;* that this meeting vote their thanks to Messrs. A. N. Niles and C. L. Strong, for their services for furnishing volunteers, and the $450 in their hands." To evidence of the reading of the Goff and Buell writing to the meeting, and of the report, and of the action of the meeting thereon, and of the passage of the above motion, and of the offer and statement of Niles regarding the $450, all which was offered by the respondents, the petitioners objected severally, as not within the warning of the meeting, and not competent to be brought before or acted upon by the town at the meeting; and further, as to the " motion," that the record did not show that the same was passed, and that the parol testimony to that effect offered by the respondents was inadmissible; and also, as respects the report, that the same was not recorded or filed with the town clerk. The committee finds that the report was not recorded or filed or left with the town clerk, but was retained by Niles. It was subsequently demanded of him by the town authorities after the controversy arose in these matters and this suit was brought. At a town meeting held in March, 1868, he produced and read it again. It was then demanded of him by the selectmen of the town. He said he had not been aware that he had it until he accidentally found it among other papers. He did not give it up however, but has retained it until now. Shortly after the annual meeting in 1865, Niles gave up to the incoming selectmen certain papers of the town in his possession, and with these a book in which was contained in writing and signed by him statements respecting the recruiting of men for the town. Among these statements appeared the names of all the twenty-one men, (save four put into the regular army, and whose names were not given,) put into the United States service to fill the quota of the town for the July call

of 1864, and also the names of the twenty-four men, for twenty of whom the respondents claim the $6,200 for Strong and Niles. Following the names of the men filling the quota for the July call there appears in the book the following note: " These men were recruited by A. N. Niles, Henry M. Dunham and C. L. Strong, in August and September 1864. Bounties paid ranging from one to four hundred and fifty dollars, at an aggregate cost, including time and expense, of $7,359." Otherwise the book showed nothing more respecting the matters in question than the respondents' report as given above.

As to the $6,200, the respondents claimed the only issue under the pleadings to be whether or not the respondents Niles and Strong received the same in their individual capacity, and not either as selectmen or committee of the town to account for the same; and that the committee could take no evidence as to the cost and expense of procuring the men last obtained, and could take no account on the basis of an agency for the town on the part of Niles and Strong, either as selectmen or committee. The committee however received the evidence offered by the petitioners bearing on such cost and expense, and with reference to an accounting on the basis of such an agency; and also such evidence in answer on the part of the respondents as the latter chose to offer.

As respects the $7,359 raised by the respondents as selectmen for the July call of 1864, the committee finds that the disbursement thereof by the respondents was not through orders on the treasurer of the town. They did not pass the money into the treasurer's hands at all, but retained it in their own, disbursing therefrom as they saw fit from time to time. To the allowance of any disbursement made in this way, either of said sum of $7,359 or of said $6,200, the petitioners objected as not warranted by law, or within any authority actually given by the town meetings under which the disbursements are claimed by the respondents, or which could be given under the warnings of the same. To be allowed, the petitioners claimed that every disbursement should have been made through the ordinary town authorities,

and by orders on the town treasurer, the money being deposited in his hands.

The respondents did not offer themselves and were not called as witnesses in the case, beyond their answer to the petition and its interrogatories, which answer the respondents insisted to be conclusive except as any part thereof was disproved by other evidence; while on the other hand the petitioners claimed the answer not to be evidence at all, except so far as it was directly responsive to the interrogatories of the petition.

No account in explanation of the disbursements of the sums in question was given to the committee by the respondents, except what appears in their answer, and in the book left with the incoming selectmen in 1865; nor has any explanation or report of such disbursements ever been given to the petitioners other than appears above.

The committee has considered all the evidence offered by the parties as above, notwithstanding the objection made thereto, but he has not received the Goff and Buell writing, and the report made as above to the town meeting in 1865, and the action of the town following, as a conclusive settlement between the parties. The town acted without scrutiny, and without knowledge or information of particulars, on a general confidence in the respondents.

The committee is of opinion that the respondents ought to have given him more light on the subject of their disposal of said sums; and he has considered this in the conclusions he has arrived at in taking the account; adopting as his guide the lower rather than the higher rates for men proved before him, when not satisfied as to what price was paid, or that a higher price was paid as in certain instances.

He finds and allows to the respondents in account with the town, in respect to the said sum received by them of $7,359, for all time and expenses and cost of men in filling the town's quota for the July call of 1864, $3,735 and finds that the respondents are liable to and owe the petitioners in account for the balance of said $7,359, viz: $3,624, with interest from January 1st, 1865.

As to the $3,200 the committee does not accept the view of the respondents that the said Niles and Strong are entitled to retain the same without account, as their due for services rendered under the action of the town. He finds that at the instance of some later town meeting than has been mentioned, they paid over to the town the $450 previously offered by them as aforesaid, leaving to be accounted for a balance of $5,750.

Of this your committee allows the said Strong and Niles, as the cost of procuring the twenty men obtained by them and referred to in the Goff and Buell writing, and covering also ten dollars a man premium for procuring said men, $2,200, and finds that the said Niles and Strong are liable to and owe the petitioners in account for the balance of said $6,200, viz: $3,550, with interest from January 1st, 1865.

The respondents remonstrated against the acceptance of the report of the committee, the grounds of remonstrance appearing sufficiently in the brief of their counsel hereinafter given. The Superior Court found certain facts with regard to the matter set up in the remonstrance, which either sufficiently appear upon the face of the report or are not important in the disposition made of the case by this court. The case was reserved upon the report and the facts thus found, for the advice of this court as to whether the report should be accepted in whole or in part, and as to what decree should be passed.

*T. C. Perkins* and *Warner*, for the petitioners, contended that the report presented by the respondents to the town on the 2d day of October, 1865, was not in any proper sense an account stated, and that the manner in which it was presented and the fact that it was afterwards retained and withheld from public inspection by the respondents rendered it of no effect against the town; that the committee was not limited to the inquiry as to whether there had been an account stated but had a right to investigate and state the account; that Niles and Strong were to be considered as acting in their official capacity as selectmen of the town in procuring and paying for recruits under the vote of the town and not in their

private capacity, and that therefore they were entitled to
nothing beyond their actual disbursements and a reasonable
allowance for the time spent; that it was their duty, in the
relation in which they stood to the town, to put an end to that
relation or to act wholly for the town, and that it was not
enough to state in the town meeting, in the imperfect man-
ner in which they did, that they should act in their private
capacity; that as officers and agents of the town the law
would not allow them to do any act for their own private
benefit and against the interests of the town; and that as
the respondents had had a full opportunity to be heard before
the committee with regard to their account, and had declined
to introduce evidence on the subject, the committee had done
rightly in presuming the facts against them in certain cases
as stated in the report, and had justly stated the account, and·
that there was no reason why the respondents should be
allowed a further hearing on the subject.

*R. D. Hubbard* and *A. P. Hyde,* for the respondents.

1.   The issue raised upon the pleadings relates simply to
the existence or non-existence of an account stated or more
properly speaking an account settled.   1st. The bill states
these two propositions only; in the first place, that the
defendants were from 1863 to 1865 the receivers of funds of
the plaintiffs amounting to $30,000, which they were bound
to account for; and in the second place, that the defendants
have not accounted for the funds; and the bill concludes with
a prayer for a disclosure and an account.   2d. The answer
admits the case stated in the bill, discloses a statement of the
sums received and expended, and sets up in confession and
avoidance this special bar to the relief prayed for, namely,
that the defendants had already accounted to the plaintiffs;
in other words an account stated between the parties.   3d.
The replication is a traverse direct of the bar pleaded by the
defendants.   It is, to be sure, somewhat mixed and confused,
but in legal construction is nothing but a naked traverse.
4th. The parties by their pleadings have put themselves upon
the single issue of an account stated, affirmed in the answer

and traversed in the replication, and of this issue the burden was of course on the defendants. . In this state of the pleadings the case was referred to the committee. What duty did this reference impose on the committee ? To find the issue presented on the pleadings; nothing else or more. 2 Swift Dig., (Dutton ed.,) 268.

2. This issue the committee has found in favor of the defendants, by finding that they presented to the plaintiffs at their annual town meeting in October, 1865, a report of the whole account, and that the report was accepted by the town. If this is so found, then the report of the committee is to be accepted to the extent of this finding, and judgment should be rendered dismissing the bill. 2 Swift Dig., (Dutton ed.,) 268.

3. The committee has undertaken to set aside the account stated and to call the defendants to a new account. In this he has manifestly erred, for the taking of a new account is not involved in the issue raised on the pleadings, because—1st. The plaintiffs, having in their replication traversed the bar of the answer, could not also reply in confession and avoidance. They could not confess and deny the same fact. Story Eq. Pl., § 800 ; 1 Harrison's Ch., 300 ; 1 Barbour, Ch. Prac., 138.—2d. If the plaintiffs might have legally joined matter in confession and matter in avoidance in one, even then the committee could not have proceeded to restate the account, because an account stated can only be impeached on a bill or replication charging fraud or mistake, and these are not charged either in the bill or replication. 1 Daniell Ch. Prac., (3 Am. ed.,) 689 ; Story Eq. Pl., §§ 798, 847, and notes ; 1 Story Eq. Jur., §§ 523, 527 ; 2 id., § 1524 ; *Endo* v. *Caleham*, 1 Younge, 306 ; *Chambers* v. *Goldwin*, 9 Ves., 254; *Brown* v. *Vandyke*, 4 Halst. Ch., 795 ; *Weed* v. *Smull*, 7 Paige, 573. Or, if it be said that the replication does, inartificially to be sure, but yet substantially, charge fraud or mistake, one or both, then in reply we add :—3d. An account stated can be impeached only on allegations setting out the particular frauds or mistakes relied upon to impeach the account. Story Eq. Pl., § 800 ; *Taylor* v. *Haylin*, 2 Bro. Ch.,

310; *Chambers* v. *Goldwin*, 9 Ves., 254; *Leaycraft* v. *Demp-sey*, 15 Wend., 83.

4.  But if under the pleadings the committee might have lawfully permitted an impeachment of the account stated, the committee has still erred, because—1st. The committee has not found in impeachment of the account either fraud or mistake. He has only found that " the town acted without scrutiny and without knowledge of particulars, in a general confidence in the respondents." If there was an account stated in fact, the mere absence of scrutiny,—a mere igno-rance of particulars,—a mere general confidence of the par-ties in each other, would not invalidate the account stated.

5.  If we are right in the premises the Superior Court should be advised,—1st. To accept that part of the report which finds an account stated and to reject all other parts of it, and thereupon to render judgment dismissing the bill. *Callender* v. *Colegrove*, 17 Conn., 1.—2d. Or if not, to re-ject that part of the report which states the account and order the case to a new accounting. But if there were no positive error in the matters complained of in the remon-strance, the defendants 'should be admitted to a new account-ing as a matter of discretion and in order to do justice between the parties. The finding of the committee is, by his own confession, a mere speculative result. The disclosure was disregarded as evidence, and the defendants rendered no account, except in the disclosure, of receipts or expenditures. In this they may have been at fault. They acted under advice of counsel, however, and the fault, if fault there be, was the mistaken direction of counsel.

CARPENTER, J.  The respondents claim that the only issue formed by the pleadings in this case is the existence or non-existence of an account stated, and that the committee had no power to take an account until that issue should be deter-mined against the respondents, or, if determined in their favor, until the account stated should be opened or set aside, upon a petition for that purpose alleging reasons.

The bill alleges that the respondents, as selectmen of the

town, or as a committee, or in some other capacity, received a large amount of money belonging to the petitioners, for which they had not accounted, and prays for a disclosure, and that an account may be taken. The respondents in their answer respond to the interrogatories in the bill, allege that they rendered an account, which was accepted by the town, and close their answer by saying, " that as to each and every allegation in said bill of complaint, not herein admitted to be true, they deny the same, and say they are untrue." The replication traverses the answer, re-affirms the allegations in the bill, and sets out with some particularity the facts and reasons upon which they rely to show that the account rendered should not have a conclusive effect as against them.

The replication may perhaps be regarded as a traverse simply ; in which case the allegations relating to an account rendered must be considered as, in effect, only giving notice to the respondents of the grounds on which they claim that the account rendered is not, in contemplation of a court of equity, an account stated, or an account settled ; or, it may be regarded, as the respondents claim in another part of their brief, as a traverse joined with a confession and avoidance. Viewed in the latter light it is somewhat informal, and might not have stood the test of a special demurrer. But that is a question we have no occasion to discuss, as the respondents manifestly either waived the defect, if any, in form, or considered the replication as a traverse merely. In either case we think the committee did right in proceeding to hear the whole cause. In one case the evidence offered by the petitioners tended to prove that the transactions between the parties did not, in legal contemplation, constitute an account stated ; and in the other, assuming that there was an account stated, that the facts and circumstances surrounding it were of such a character that a court of equity ought to set it aside and take a new account.

It must be borne in mind that the respondents do not plead in bar an account stated, but set it up, among other matters, by way of answer. Had they desired to present that single issue, and have it determined before taking an

account, they could have framed the pleadings so as to have accomplished that result. But this they have not done. They have undertaken to answer, and have answered fully. All the matters in dispute between the parties were open to a hearing before the committee, as it is not according to our practice, in cases of this character, and upon this state of the pleadings, to select a single issue, even though it be a vital one, and determine the facts and the law in respect to that, before proceeding to hear other issues involved in the pleadings. Such a course would be attended with unnecessary delay and expense. If the pleadings put in issue the whole cause, we see no good reason why the parties should not be prepared to try the whole cause. If upon the trial it should clearly and unmistakeably appear that the parties had stated an account in such a manner as to be conclusive, the committee would be justified in declining to take the account. But if it should be clear that the statement of the account ought not to be binding, or if the trier is in doubt, we think he should, ordinarily, state the account and ascertain the balance. And then if the court can say, as matter of law, upon the facts reported, that the parties have stated an account which ought to stand, that part of the committee's report which states an account should be rejected and the bill dismissed. If, however, the account rendered does not amount to an account stated, then the account taken by the committee should stand, unless for other reasons it ought to be set aside or modified.

That brings us to consider what we regard as the main question in this case, namely, whether the transactions between these parties constituted a stated account. We are satisfied that this question should be answered in the negative. It is not therefore a case in which the parties are before a court of equity for the purpose of opening an account stated, and we are not called upon to discuss the law pertaining to proceedings of that character.

The committee says in his report that " he has not received the Goff and Buell writing, and the report made as above to the town meeting in 1865, and the action of the town follow-

ing, as a conclusive settlement between the parties." He then adds, "The town acted without scrutiny, and without knowledge or information of particulars, on a general confidence in the respondents." So far as the question was one of fact the committee has found it against the respondents. As a question of law, or as a mixed question of law and fact, we think the committee was justified in the result to which he came.

The reasons which lead us to concur in that result will be briefly stated.

1. The reason stated by the committee, that the town acted on a general confidence in the respondents, and without knowledge or information of particulars, is a cogent one. A party possessing the confidence of another should be particular not to abuse that confidence. Hence the utmost candor and good faith should characterize all his dealings with him. Especially is this so in respect to towns and other corporations that are obliged to transact all their business through agents. The respondents knowing the confidence thus reposed in them, framed their report so as to withhold from the town a knowledge or information of particulars. That indicates a disposition to abuse that confidence. It tends strongly to prove undue advantage. Perhaps a jury might be justified in finding fraud from that circumstance alone. Still, we would not wish to be understood as saying that we regard it as sufficient evidence of fraud to require the opening of an account stated, which is otherwise unobjectionable; but, taken in connection with the other circumstances in this case, it is entitled to great weight in determining the question whether the parties have intentionally and understandingly settled their accounts.

2. The alleged settlement was not with any authorized agent of the town. The account was not presented to the successors of the respondents, nor to auditors, nor to a committee; but to a town meeting, which was not warned for that purpose, and with no notice, so far as appears, that such an account was to be acted upon. It is true it was at the annual town meeting at which the selectmen's ordinary report for the year preceding was usually presented and acted upon;

but this report was special, covering transactions most of which occurred in previous years, and related to extraordinary matters. The events of years were brought together in a general and indefinite account, and acted upon at the meeting without scrutiny, without books or other original entries, and without vouchers.

3. The account rendered is suspicious on its face. There is a want of frankness—a manifest indisposition to render a full, complete and intelligible account. It pertained to a large amount of money, raised and expended by the town ·in an extraordinary emergency. Instead of giving the items in detail, with names, dates and other indicia by which the fairness and accuracy of the account could be tested, it gives the aggregate sums expended, the number of men furnished, and the average cost of each man. In this respect the account, so far as it relates to the call of December, 1864, is worthy of particular notice. The town voted to authorize the payment of such a sum as might be necessary, not exceeding $300 per man, and ten dollars each for recruiting. The respondents charged the full sum, $310 per man, without showing how much was actually expended, nor how much it was necessary to pay in order to secure the men. In this way the account could easily embrace and conceal a large profit to the respondents. Whether such was the design or not is immaterial; it is enough that the town did not obtain what it was entitled to, a complete statement of the expenditures in detail.

4. The account, such as it was, was withdrawn by the respondents, and ever after kept in their possession. It was not kept on file, as is usual with such documents, nor was it entered upon the records or treasurer's books, so that nothing in the archives of the town furnished any information as ·to the expenditure of this large amount of money; but the whole matter rested in the recollection of those—and it may have been a very small part of the town—who happened to be present and heard the report read.

The impropriety of this proceeding is more apparent, when we remember that this money was not expended in the ordi-

nary way, by orders drawn by the selectmen on the treasurer, and entered on the books of the selectmen and treasurer, but was taken by the respondents and expended in a manner known only to themselves. Had they designed to foreclose the town by something in the nature of a snap judgment, and conceal their doings and keep the town in ignorance of their proceedings, they could hardly have devised a more ingenious plan.

5. It does not appear that the town acquiesced in the alleged settlement. The terms of it were not known to the inhabitants of the town who were not present at the meeting, except by hearsay and rumor; and those present had no knowledge, except such as they could retain in their memories. Less than three years had elapsed when this suit was commenced. How early in that period a claim was made upon the respondents by the authorities of the town, does not appear; but judging from what ordinarily transpires in cases of this character, we may presume that the controversy, previous to the commencement of the suit, must have occupied some considerable time. It does not appear that the respondents have changed their relations to the town or others, or in any respect placed themselves in a worse condition in consequence of the action of the town.

In concluding this part of the case, by way of summary, we say:—that to a limited extent the relations between these parties was of a confidential nature; the report was presented to the town at an unexpected time, without previous notice, and with no opportunity for the town or its agents to examine it with that degree of care and scrutiny which its importance demanded; it was not a full and complete account, but was merely an abstract showing results of the various transactions, deficient in many essential particulars, and wholly unaccompanied with vouchers; the report was withheld from the officers of the town, so that no opportunity was given for a thorough examination, and acquiescence in the pretended settlement for an unreasonable length of time, which is an important element in some of the cases, is wholly wanting in the present case. For these reasons this ought not to be deemed a stated account.

Other questions, of minor importance, are presented by the remonstrance, and the finding of the court thereon, but as they do not seem to have been specially insisted on in the argument, we deem it unnecessary to refer to them in detail.

The view we have taken of this case leads us to construe the report of the committee as finding the main issue, viz :— whether there was an account stated—in favor of the petitioners. That being so, we entertain no doubt that the course taken by the committee in proceeding to state the account between the parties was correct. The report therefore ought not to be set aside. The only remaining question is, whether it ought to be accepted as it stands, or an opportunity given the respondents for a further hearing.

It seems that the respondents offered no evidence touching the account itself except that contained in their answer; and that was so general and indefinite as to give the committee little information as to the items of the account. The petitioners, from the nature of the case, could throw little light on the subject. Under these circumstances it is not surprising that the committee should feel that the respondents ought to have given him more light on the subject of the disposal of the money received by them, and to regret the necessity of stating an account with such insufficient and unsatisfactory data. As it was, it is quite possible that injustice has been done. If so, it may, perhaps, be fairly attributed to the respondents' own folly, and we might with propriety advise the acceptance of the report as it is. Nevertheless, the case is an unusual one, and somewhat novel in some of its features; and it is obvious enough, we think, that the course taken by the respondents in refusing to offer further evidence, was the result of a misconception of their legal rights. Indeed it was stated in the argument that they acted in this respect upon the advice of eminent counsel.

Considering all the circumstances, we do not deem it inequitable to advise the Superior Court to accept the report of the committee and establish it, except as to the amount of the account; and as to that, to give the respondents an opportunity to render a just and true account, and to show, if they

Chatham *v.* Niles.

can, that a smaller balance ought to have been found against them.  In doing so, the question may again arise, whether the respondents, Niles and Strong, in recruiting men for the call of December, 1864, were to be regarded as acting in their private capacity, or as agents of the town.  Upon the facts stated in the report of the committee, we are of the opinion that they ought to be considered as having acted solely in their capacity as selectmen or agents, and that they should be allowed such expenditures only as they might lawfully make in such capacity, without profits or commissions to themselves, directly or indirectly, except such, if any, as were contemplated by the votes of the town.

In this opinion the other judges concurred.